# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| MOBILITY WORKX LLC, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>AMAZON.COM SERVICES LLC and §<br>AMAZON WEB SERVICES, INC., §<br>§<br>Defendants. § | Civil Action No. 4:24-cv-1060<br>Judge Mazzant |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Motion of Defendants Amazon.com Services LLC and Amazon Web Services, Inc. to Dismiss for Improper Venue and Failure to State a Claim (Dkt. #18). Upon review of the Motion and relevant pleadings, the Court finds the Motion should be **GRANTED**.

### BACKGROUND

This is a patent case. Plaintiff is a Florida limited liability company that develops and licenses technology for private cellular networks (Dkt. #18 at p. 11). Its principals, the named inventors of the asserted U.S. Patent Nos. 7,697,508 ("the '508 Patent") and 8,213,417 ("the '417 Patent") (collectively, the "Asserted Patents"), reside in Florida (Dkt. #1 at pp. 1–2). The Asserted Patents were developed at the University of Florida and later assigned to Plaintiff (Dkt. #18 at p. 11). Plaintiff claims to maintain a principal place of business at a residential property in Winters, Texas, but public records indicate the company conducts no operations there (Dkt. #18 at p. 11–12).

On November 29, 2024, Plaintiff sued Defendants Amazon Web Services, Inc. ("AWS") and Amazon.com Services LLC ("ASL") for patent infringement in this district (Dkt. #1). The Complaint alleges that Defendant AWS's "Private 5G" service infringes the Asserted Patents and that Defendant ASL infringes by selling certain third-party mobile devices through Amazon's retail

website (*See, e.g.*, Dkt. #1 at pp. 5–7; Dkt. #1-2 at p. 2; Dkt. #1-4 at p. 2). To support venue, Plaintiff points to three Amazon fulfillment centers in this district and an "AWS server rack" located in a third-party data center in Carrollton, Texas (Dkt. #1 at pp. 3–4).

Defendant AWS is a Delaware corporation headquartered in Seattle, Washington (Dkt. #1 at p. 2). It operates a global cloud computing business but has no offices, data centers, or employees in this district (Dkt. #18 at p. 13). Defendant AWS launched Private 5G in August 2022 to enable customers to deploy their own private cellular networks (Dkt. #18 at p. 10). The only public deployment occurred at a California music festival (Dkt. #18 at p. 10). Between August 2022 and April 2024, the service had fewer than ten customers, none of which were in Texas, before AWS stopped investment and deactivated the service in January 2025 (Dkt. #18 at pp. 10–11). Private 5G's engineering, marketing, and finance teams were based in Seattle and the Bay Area, and related technical materials are stored on servers in Oregon and Virginia (Dkt. #18 at p. 11).

Defendant ASL is also a Delaware corporation headquartered in Seattle (Dkt. #1 at p. 2). It operates Amazon's retail website, sells third-party consumer products nationwide, and owns and operates the company's fulfillment centers, including those in this district (Dkt. #18 at p. 9). Defendant ASL allegedly is not associated with Defendant AWS's Private 5G service (Dkt. #18 at p. 19). The Complaint's infringement allegations against Defendant ASL are limited to mobile devices sales, which Defendants contend cannot satisfy all elements of the asserted claims absent Defendant AWS's alleged network-side processes (Dkt. #18 at pp. 15–16).

On February 13, 2025, Defendants moved to dismiss for improper venue under Rule 12(b)(3), failure to state a claim under Rule 12(b)(6), or alternatively to transfer the case to the Northern District of California ("NDCA") under §§ 1404(a) or 1406(a) (Dkt. #18). Plaintiff's

2

deadline to respond was extended to March 20, 2025 (Dkt. #26). To date, Plaintiff still has not responded.[1] The motion is now ripe for adjudication.

## LEGAL STANDARD

### I.     Dismissal for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

---

[1] Under the Local Rules, "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." LOCAL RULE CV-7(d). The Court will accordingly apply that presumption in its analysis. Further, the Court's notes that its finding of improper venue in this district is limited to the facts of this case. Plaintiff did not contest Defendant's venue-related factual assertions; thus, the Court must take those assertions as uncontroverted. The Court does not necessarily suggest that venue would necessarily be improper in other cases involving different facts or parties that have actively disputed whether venue is proper.

3

It has been held "as a matter of Federal Circuit law that, upon motion by the [d]efendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue. *In re ZTE (USA), Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

## II. Dismissal for Failure to State a Claim

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III.    Convenience-Based Transfer

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been

5

filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Id.* at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice

6

should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

## ANALYSIS

Defendants move to dismiss for improper venue under Rule 12(b)(3), to dismiss the claims against Defendant ASL for failure to state a claim under Rule 12(b)(6), or, in the alternative, to transfer this action under 28 U.S.C. §§ 1404(a) or 1406(a) (Dkt. #18 at pp. 7–8). Because venue is a threshold matter, the Court first addresses whether it is proper in this district for each defendant. The analysis proceeds separately for Defendants AWS and ASL under the two prongs of § 1400(b). If the Court concludes that venue is improper for both defendants, it must decide whether dismissal or transfer is the appropriate remedy under § 1406(a). In the alternative, if venue were proper, the Court would then consider whether the case should nonetheless be transferred under § 1404(a) based on private and public interest factors.

### I.     Whether Venue is Proper in this District

In a patent case, venue is governed by 28 U.S.C. § 1400(b), which provides that an action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." A domestic corporation "resides" only in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017). The plaintiff bears the burden of establishing proper venue as to each defendant. *In re ZTE*, 890 F.3d at 1013. The question before the Court is whether this district is a proper venue for either defendant. It is not.

7

### A.     Venue is improper as to Defendant AWS.

Defendant AWS is incorporated in Delaware and thus does not reside in this district under the first prong of § 1400(b) (Dkt. #1 at p. 2). To independently satisfy the second prong of § 1400(b), Plaintiff alleges venue based on (1) three Amazon fulfillment centers located in Fort Worth, Richardson, and Carrollton, Texas, and (2) a "server rack" purportedly owned and operated by Defendant AWS at a co-location data center in Carrollton (Dkt. #1 at pp. 3–4).

The limited record before the Court suggests that Defendant AWS has no offices, data centers, or employees in this district (Dkt. #18 at p. 9). Nor does it own, lease, or operate the identified fulfillment centers (Dkt. #18 at p. 9). Defendants AWS and ASL are distinct corporate entities; the fulfillment centers are leased and operated by Defendant ASL in connection with its retail business, not Defendant AWS's cloud computing services (Dkt. #18 at p. 14). Defendant AWS does not conduct any business at those facilities, does not employ personnel there, and does not hold them out as AWS locations (Dkt. #18 at p. 14).

As to the alleged server rack in Carrollton, Defendant AWS explains that the equipment is located at a third-party co-location facility purchased by a customer from Defendant AWS and owned by a separate Amazon subsidiary (Dkt. #18 at p. 9). Defendant AWS neither owns nor leases space at that facility, and its employees do not regularly work there (Dkt. #18 at p. 9). Under Federal Circuit precedent, the mere presence of a server at a third-party facility, without the regular physical presence of a defendant's employee or agent conducting the defendant's business there, does not establish a "regular and established place of business" under § 1400(b). *See In re Google*, 949 F.3d 1338, 1345–46 (Fed. Cir. 2020). The Carrollton server rack, therefore, does not create a basis for finding venue proper here.

Moreover, Plaintiff does not allege that Defendant AWS committed acts of infringement in this district; the Complaint contains no factual allegations that Defendant AWS's accused Private 5G service was ever deployed or sold in Texas (*See generally* Dkt. #1). Defendant AWS's uncontroverted evidence shows that the service had fewer than ten customers, none of which were in Texas, before being deactivated in January 2025 (Dkt. #18 at p. 10). Absent a regular and established place of business and acts of infringement in this district, venue cannot be proper for Defendant AWS. *See* 28 U.S.C. § 1400(b).

### B.    Venue is improper as to Defendant ASL.

Defendant ASL is also incorporated in Delaware and thus does not reside in this district under the first prong of § 1400(b) (Dkt. #1 at p. 2). Accounting for this, Plaintiff alleges venue based on Defendant ASL's operation of Amazon's retail website, its sale of third-party mobile devices nationwide (including in this district), and its operation of the three identified fulfillment centers in Fort Worth, Richardson, and Carrollton (Dkt. #18 at p. 15; *see* Dkt. #1 at pp. 3–4).

The fulfillment centers are physical places within this district that Defendant ASL leases and operates, satisfying the first condition of the second prong under § 1400(b) as to Defendant ASL (i.e., the regular and established place of business requirement) (Dkt. #18 at p. 14). *See In re Cray*, 871 F.3d at 1355, 1363–64 (Fed. Cir. 2017); 28 U.S.C. § 1400(b). The dispute centers, however, on whether Defendant ASL has satisfied the remaining condition of the second prong under § 1400(b) by committing acts of infringement here. The Complaint alleges that Defendant ASL infringes by selling certain third-party mobile devices that can connect to Defendant AWS's accused Private 5G network (Dkt. #1 at pp. 2–5). Defendant ASL argues that the asserted claims require network-side components and processes allegedly performed by Defendant AWS, not the mere retail sale of mobile devices (Dkt. #18 at pp. 13–14). In Defendant ASL's view, without

Defendant AWS's accused infrastructure, the devices cannot meet all claim limitations, and thus no act of infringement can be attributed to Defendant ASL in this district (Dkt. #18 at pp. 7, 16–17).

Plaintiff further contends that the two Amazon entities act as a single enterprise such that Defendant AWS's alleged conduct can be imputed to Defendant ASL for venue purposes (Dkt. #1 at p. 4). Imputing venue between corporate affiliates requires a showing of a lack of corporate separateness or the elements of a joint enterprise. *See Celgene Corp. v. Mylan Pharms., Inc.*, 17 F.4th 1111, 1125 (Fed. Cir. 2021); *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-CV-721-ADA, 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020); *Soverain IP, LLC v. AT&T, Inc.*, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017). Here, Defendants' uncontroverted evidence suggests that they maintain separate corporate structures, management, and business lines (Dkt. #18 at p. 18). Plaintiff's allegations of common ownership and shared branding are therefore insufficient to pierce the corporate veil or establish a joint enterprise (Dkt. #18 at p. 19). Accordingly, Plaintiff has not met its burden to show that venue would be proper as to Defendant ASL.

## II.     Transfer Under 28 U.S.C. § 1406(a)

Having determined that venue in this district is improper for both defendants, the Court must decide whether to dismiss the claims or transfer the action "in the interest of justice" to a proper forum. 28 U.S.C. § 1406(a). "Transfer is typically considered more in the interest of justice than dismissal . . . . When deciding where to transfer under § 1406(a), a court may consider the 28 U.S.C. § 1404(a) convenience factors." *AGIS Software Dev. LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-24-JRG-RSP, 2021 WL 6616856, at *3 (E.D. Tex. Nov. 10, 2021) (citations omitted). Those factors serve merely as a guide for evaluating whether transfer is preferable to dismissal; they are not controlling in the § 1406(a) transfer analysis. *See id.* Consequently, the Court looks to

the § 1404(a) factors below to assess whether transferring this case to NDCA would further the interests of justice. *See* 28 U.S.C. § 1406(a).

### A.  The case could have been brought in NDCA.

The threshold inquiry under § 1404(a) is whether the transferee district is one in which the action could have been brought. *Volkswagen I*, 371 F.3d at 203. Both Defendants maintain a substantial presence in NDCA, including offices and employees in the San Francisco Bay Area (Dkt. #18 at pp. 19–20). Defendant AWS developed the accused Private 5G service there, and Defendant ASL sells accused mobile devices to customers in that district (Dkt. #18 at pp. 18–19). NDCA could exercise personal jurisdiction over both defendants, and venue would be proper there under § 1400(b) (Dkt. #18 at p. 20). Thus, this requirement is satisfied.

### B.  The private interest factors support transfer.

The private interest factors weigh in favor of transfer, starting with the first private interest factor—the relative ease of access to sources of proof. *See Volkswagen I*, 545 F.3d at 315. In patent cases, relevant documents and witnesses are typically located where the accused products or services were developed. *See In re Apple, Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). Here, Defendant AWS's engineering, marketing, and finance teams for Private 5G were based in the Bay Area and Seattle, and related technical materials are stored on servers in Oregon and Virginia (Dkt. #18 at pp. 21–22). In contrast, no relevant sources of proof are in this district (Dkt. #18 at p. 21).

The second factor—the availability of compulsory process to secure non-party witnesses—also favors transfer. *See Volkswagen I*, 545 F.3d at 315. Defendants identify multiple prior-art witnesses in the Bay Area who are within NDCA's subpoena power (Dkt. #18 at pp. 22–23). By contrast, no comparable third-party witnesses are located in this district; indeed,

Plaintiff does not identify any Texas-based witnesses in its Complaint (Dkt. #18 at p. 23; *see generally* Dkt. #1).

The third factor—the cost of attendance for willing witnesses—also favors transfer. *See Volkswagen I*, 545 F.3d at 315. Defendant AWS's knowledgeable employees are concentrated on the West Coast (Dkt. #18 at p. 24). None reside in this district (Dkt. #18 at p. 24). Moreover, Florida-based witnesses for Plaintiff would not be significantly more burdened by traveling to NDCA than to Sherman, Texas (Dkt. #18 at p. 24). Litigating in NDCA, then, would substantially reduce travel time for the greater number of expected witnesses.

The fourth factor—practical problems associated with a trial—does not weigh against transfer. *See Volkswagen I*, 545 F.3d at 315. Plaintiff's other pending suits in this Court involve different defendants and products, so no significant efficiencies would be gained by keeping this case here (Dkt. #18 at p. 25).

### C.     The public interest factors support transfer.

The public interest factors also weigh in favor of transfer. The first public interest factor, court congestion, does not weigh against transfer, given that this case is in its infancy (Dkt. #18 at p. 26). *See Volkswagen I*, 545 F.3d at 315. The second factor, local interest, again favors transfer. *See id.* The conduct giving rise to the claims occurred primarily in the Bay Area and Seattle, not in this district (Dkt. #18 at p. 26). NDCA has a stronger localized interest in resolving a dispute that implicates the work and reputation of West Coast engineers and managers (Dkt. #18 at pp. 26–27). And the remaining public interest factors—familiarity with governing law and avoidance of conflicts—are neutral (Dkt. #18 at p. 27). *See id.*

The Court concludes that this case could have been brought in NDCA. Several private interest factors—sources of proof, compulsory process, and witness convenience—favor transfer,

as does the local interest factor. The remaining factors are neutral. Accordingly, the Court will exercise its discretion under § 1406(a) to further the interest of justice by transferring the case to NDCA. The Court therefore finds that Defendants' Motion should be **GRANTED**.

## CONCLUSION

It is therefore **ORDERED** that Motion of Defendants Amazon.com Services LLC and Amazon Web Services, Inc. to Dismiss for Improper Venue and Failure to State a Claim (Dkt. #18) is hereby **GRANTED**.

It is further **ORDERED** that this case be transferred to the United States District Court for the Northern District of California.

**IT IS SO ORDERED.**

**SIGNED this 13th day of August, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE